**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

ALAN VERHOW,

                                                    Plaintiff,

-vs-                                             DECISION and ORDER

MICHAEL J. ASTRUE, Commissioner of Social Security,                  08-CV-6423-CJS

                                                    Defendant.

---

**APPEARANCES**

| | |
|---|---|
| For Plaintiff: | William J. McDonald Jr., Esq.<br>Bond and McDonald<br>91 Genesee Street<br>Geneva, NY 14456<br>(315) 789-8480 |
| For Defendant: | Christopher V. Taffe, A.U.S.A.<br>John J. Field, A.U.S.A.<br>United States Attorney's Office<br>100 State Street, Room 620<br>Rochester, NY 14614<br>(585) 263-6760 |

**INTRODUCTION**

      **Siragusa, J.** This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner"), which denied the application of plaintiff Alan Verhow ("Plaintiff") for disability insurance benefits. Now before the Court is the Commissioner's motion (Docket No. 4) and Plaintiff's cross-motion (Docket No. 6) both for judgment on the pleadings. The Commissioner seeks an order affirming the decision of the administrative law judge ("ALJ") denying Plaintiff disability

insurance benefits, while Plaintiff seeks a reversal of the Commissioner's decision, or in the alternative, an order directing the matter to be remanded for a new hearing. Although, the Commissioner in his motion papers argues that substantial evidence supported the ALJ's decision, he has not filed a response to the issues raised in Plaintiff's cross-motion and memorandum of law. For the reasons that follow, Plaintiff's application in granted in part, denied in part, the Commissioner's application is denied, and this matter is remanded for a new hearing.

## BACKGROUND

*Procedural History*

On August 9, 2005, Plaintiff applied for disability benefits, claiming an onset date of March 12, 2005. (Record at 26-27.) The Commissioner initially denied the application on October 28, 2005, and Plaintiff requested a hearing before an ALJ. (Record at 14.) The hearing was held on August 24, 2006. (Record at 255-302.) On September 12, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (Record at 4-6.) The ALJ's decision became the final decision of the Commissioner on September 8, 2008 when the Appeals Council denied Plaintiff's appeal.

*Plaintiff's Vocational and Educational Background*

Plaintiff was born on May 27, 1962 and was forty-six years old on the day of the ALJ's decision. He completed the eighth grade, and he reads on a seventh grade level. (Record at 265.) His past relevant work includes over twenty-five years as a laborer. (Record at 54.) In his decision, the ALJ determined that Plaintiff was not disabled and jobs existed that Plaintiff could perform. (Record at 24.)

*Hearing*

At the hearing, Plaintiff testified that he was classified as permanent partial disabled by Workers' Compensation in March 2006. (Record at 267.) He stated that he tried to find employment, however he was unsuccessful because of his medical problems. (Record at 269.) He said that he could only drive for about fifteen to twenty minutes at a time because of sciatic nerve damage. (Record at 262.) Plaintiff testified that he also had a learning disability that interfered with his ability to work. (Record at 270.) He also indicated that he suffers from constant pain in his back, which is made worse if he sits or stands too long. (Record at 271-273.) Plaintiff added that he could not take medication to alleviate the pain because he suffers from a chemical imbalance. (Record at 273.) He stated that when his pain becomes severe, he uses a back brace and occasionally a cane. (Record at 275.)

Regarding his activities of daily living, Plaintiff testified that he was able to wash dishes, grocery shop, do laundry and cook meals, but that he required assistance. (Record at 278-279.) As part of his disability application, Plaintiff submitted an activities of daily living questionnaire. (Record at 112-123.) On the questionnaire, Plaintiff stated that he: took care of his own personal hygiene and grooming needs; drove his car; grocery shopped; and socialized. *Id.* He also wrote that he did not have difficulty paying attention, finishing what he started, remembering things, and dealing with stress. (Record at 119-120.) He further indicated on the questionnaire that he could follow instructions, had no difficulty getting along with bosses or others in authority, and had not lost a job due to difficulty getting along with people. *Id.*

*Medical Evidence*

On December 17, 2003, well prior to his March 12, 2005 onset date, Plaintiff was treated by Binod Shah, M.D., for lumbar vertebral radiculopathy in the right side and right sacroiliac joint dysfunction, and, as a consequence, was unable to work. (Record at 149.) However, on March 22, 2004, after Plaintiff's condition improved, Dr. Shah allowed him to return to work. (Record at 147.)

On October 6, 2004, Plaintiff was examined by Steven Lasser, M.D., an orthopaedic surgeon. (Record at 160.) Dr. Lasser determined that Plaintiff suffered from right sciatica and degenerative lumbar disk disease. *Id.* In a follow-up examination on March 30, 2005, Dr. Lasser opined that Plaintiff's lumbar disease was located in the L3-L4, and L4-L5 back discs. (Record at 159.) Dr. Lasser concluded that Plaintiff should follow a non-invasive course of treatment and that Plaintiff did not require surgery, *Id.*

On October 8, 2004, Plaintiff was examined by Paul Povinelli, Ph.D., a licensed psychologist and consultative examiner. (Record at 151-158.) Dr. Povinelli's diagnosis was:

> Axis I:
> Learning disorder, NOS.
> Attention deficit disorder.
> Alcohol dependence in remission.
>
> Axis II:
> Borderline intellectual functioning.
>
> Axis III:
> No diagnosis.
>
> Axis IV:
> Problems in the learning and work situation.
>
> Axis V:
> GAF Scale 70.

(Record at 155.) Dr. Povinelli gave his prognosis as "with support, good." (*Id.*)

On April 13, 2005, Plaintiff was examined by Donovan Holder, M.D., a specialist in pain management. (Record at 177.) Dr. Holder concluded that Plaintiff suffered from "discogenic low back pain with L4-L5, L5-S1 radiculopathy" and "myofascial pain." (Record at 178.) Dr. Holder ordered a course of epidural injections as treatment for Plaintiff's condition. *Id.* On May 10, 2005, Dr. Holder began the epidural treatments, which continued through June 21, 2005. (Record at 174-176).

On August 25, 2005, Dr. Holder reexamined Plaintiff. (Record at 171.) Dr. Holder diagnosed him with degenerative L3 disc with posterior protrusion, right annular tear with nonconcordant pain; degenerative L4 disc with increased axial nonconcordant pain; and degenerative L5 disc with increased nonconcordant pain and posterior herniation. (*Id.*)

On September 8, 2005, a non-examining state agency medical consultant, John Devanny, M.D., examined Plaintiff and reviewed his medical records. (Record at 161-163.) Dr. Devanny diagnosed Plaintiff as having multilevel degenerative disc disease in his lumbar spine with chronic strain. *Id.* Dr. Devanny classified Plaintiff's disability as "temporary partial of a moderate degree." (Record at 164.)

On October 25, 2005, Plaintiff was examined by Robert Altmansberger, M.D., a licensed psychologist and consultative examiner. (Record at 185-202.) Dr. Altmansberger's diagnosis was: "LD, ADD[1] and Borderline Functioning." (Record at 201.) Dr. Altmansberger concluded that Plaintiff does "have some difficulty with attention and concentration" however he "does not have marked functional limits." *Id*.

---

[1]Though Dr. Altmansberger does not identify the meaning of his abbreviations, from the Record that Court surmises that LD is "learning disorder" and ADD is "attention deficit disorder."

*The ALJ's Decision*

The ALJ determined that Plaintiff met the insured status required by the Social Security Act through December 31, 2009. (Record at 21.) He further determined that Plaintiff had not engaged in substantial gainful activity since March 12, 2005, and that Plaintiff suffered from a combination of chronic back discomfort and learning disability. *Id.* The ALJ also found that Plaintiff did not have an impairment or combination of impairments[2] that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). *Id.*

The ALJ decided that Plaintiff had "residual functional capacity to perform unskilled" work. (Record at 22.) Additionally, the ALJ found that, after considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Record at 24.) Consequently, the ALJ concluded that Plaintiff was not under a "disability" from March 12, 2005 through the date of the decision. *Id.*

**STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as

---

[2] The ALJ found that Plaintiff's "lumbar spine shows mild degenerative changes and a small protrusion at L3-4." The ALJ also found that Plaintiff has "borderline intellectual functioning (per IQ scores) with a diagnosis of learning disabled and ADD, but his grade level functioning is in the limited range with reading at the seventh grade level, spelling at the fourth grade level, and math at the sixth grade level." The ALJ added that Plaintiff "mentions memory problems, but these have been present for some time, and still allowed him to engage in a long career as a construction worker at a semiskilled level." The ALJ concluded that he "finds it doubtful that it would impact on unskilled level exertion work." (Record at 21.)

a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501. The Commissioner has promulgated administrative regulations for determining when a claimant meets this definition. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful employment. If not, then the Commissioner considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities." If the claimant does suffer such an impairment, then the Commissioner determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the Commissioner will presume the claimant to be disabled. If the impairment is not so listed, then the Commissioner must determine whether the claimant possesses the "residual functional capacity" ("RFC") to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the Commissioner to prove that the claimant is capable of performing "any other work." *Schaal,* 134 F.3d at 501 (citations omitted).

At step five of the five-step analysis above, the Commissioner may carry his burden by resorting to the Medical Vocation Guidelines or "grids" found at 20 C.F.R. Pt. 404 , Subpart P, Appendix 2; *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996) (citation omitted);

*see also*, SSR 83-10 (stating that in the grids, "the only impairment-caused limitations considered in each rule are exertional limitations."). However, if a claimant has nonexertional impairments which "significantly limit the range of work permitted by his exertional limitations," then the Commissioner cannot rely upon the grids, and instead "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which the claimant can obtain or perform."[3] *Pratts v. Chater*, 94 F.3d at 39; *see also*, 20 C.F.R. § 416.969a(d).[4]

Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion ... that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole,

---

[3] "Exertional limitations" are those which affect an applicant's ability to meet the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. "Nonexertional limitations" are those which affect an applicant's ability to meet job demands other than strength demands, such as anxiety, depression, inability to concentrate, inability to understand, inability to remember, inability to tolerate dust or fumes, as well as manipulative or postural limitations, such as the inability to reach, handle, stoop, climb, crawl, or crouch. 20 C.F.R. § 416.969a.

[4] 20 C.F.R. § 416.927(d) provides, in relevant part, that "[w]hen the limitations and restrictions imposed by your impairments(s) and related symptoms, such as pain, affect your ability to meet both the strength [exertional] and demands of jobs other than the strength demands [nonexertional], we consider that you have a combination of exertional and nonexertional limitations or restrictions. ... [W]e will not directly apply the rules in appendix 2 [the grids] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rule provides a framework to guide our decision."

the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(citing 20 C.F.R. § 404.1527(d)(4)).

## DISCUSSION

In his Rule 12(c) motion for judgment on the pleadings, the Commissioner argues that substantial evidence of record supports the decision that Plaintiff was not disabled from March 12, 2005 to September 12, 2006. Plaintiff's motion contests this, raising several issues as to which he contends that the ALJ made mistakes of law, or lacked sufficient evidence to support his decision.

### *Application of Grid Rule 201.25*

Plaintiff argues that the ALJ incorrectly applied rule 201.25 of the Medical Vocational Guidelines, or "grids," because he ignored Plaintiff's nonexertional limitations. (Pl.'s Mem. 7.) If the Plaintiff suffered from exertional impairments only, application of the grids would clearly have been appropriate. *Gallivan v. Apfel*, 88 F.Supp. 2d 92, 99 (W.D.N.Y. 2000)(quoting *Pratts v. Chater*, 94 F.3d at 39). In *Heckler v. Campbell*, 461 U.S. 458 (1983), the Supreme Court examined these guidelines and concluded that the Commissioner properly could rely on them in appropriate circumstances to determine disability claims. In upholding the validity of the grids, however, the Court recognized that "some claimants may possess limitations that are not factored into the guidelines," and cautioned that under the terms of the regulations themselves, the grids are applicable "only when they describe a claimant's abilities and limitations accurately." *Id*. at 462 n. 5. The Court observed that "[i]f an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered." *Id*. "Courts have not hesitated to overturn determinations of 'not disabled' where an ALJ

conclusively has applied the grids without sufficiently considering the claimant's nonexertional impairments." *Channel v. Heckler*, 747 F.2d 577 (10th Cir. 1984). However, in *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983), the Ninth Circuit found that where substantial evidence showed that the claimant's nonexertional limitations "did not significantly limit the range of work permitted by his exertional limits," reliance on the grids was appropriate.

Here Plaintiff argues that the ALJ did not sufficiently consider whether his nonexertional limitations significantly limited the range of sedentary work that he could perform. The ALJ found that Plaintiff had "moderate limitations in pace, persistence, and concentration on complex tasks but no limitations on simple, repetitive, routine tasks." (Record at 22.) The Commissioner contends that this constitutes sufficient consideration of Plaintiff's nonexertional limitations, resulting in a finding that substantial evidence shows that the Plaintiff's nonexertional limitations would not significantly limit the Plaintiff's ability to perform unskilled sedentary work.

In reviewing the ALJ's decision, the Court finds that the ALJ did not give sufficient weight to the medical testimony of Dr. Altmansberger, who concluded that Plaintiff suffered from a learning disorder, attention deficit disorder, "borderline functioning," and "some difficulty with concentration and attention." (Record at 199.) As indicated above, under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2). In that regard, there is no evidence in the record that is inconsistent with Dr. Altmansberger's findings. The ALJ did not address Dr. Altmansberger's opinion in his

decision, and such opinion was not included in the hypotheticals offered to the vocational expert who was called to testify at the hearing. (Record at 19-25; 291-298.)

Further, the ALJ made a mistake of law with respect to the vocational expert's testimony and application of the grids. As stated previously, application of the grids is inappropriate where the claimant has significant nonexertional limitations. In place of the grids, to account for the nonexertional limitations, so that an accurate reflection of the claimant's abilities and limitations an be obtained, the testimony of a vocational expert or other similar evidence is needed to prove that jobs exist which the claimant is able to do. *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999). Plaintiff argues that in consulting a vocational expert, the ALJ essentially conceded that Plaintiff had significant nonexertional limitations. However, after the testimony of the vocational expert, the ALJ applied grid rule 201.25. Step five of the sequential evaluation requires that "if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing 'any other work.'" *Schaal v. Apfel*, at 501. The use of the grid rule at this point in the assessment is inappropriate. It ignores the fact that the vocational expert's testimony is meant to more specifically address the Plaintiff's particular limitations, namely whether he could perform "any other work."

For the reasons above, the use of grid rule 201.25 was improper. On this issue, remand is granted for a proper step five evaluation.

***Identification of a Specific Job That Plaintiff Can Do***

Plaintiff's cross-motion further claims that the ALJ failed to identify a specific job in the national economy that the Plaintiff could do, and thus did not meet his step five burden. (Pl.'s Mem. 10.) Neither the ALJ's decision nor the vocational expert's testimony specified

any job that Plaintiff would be able to do. The ALJ's decision merely stated that Plaintiff would be able to perform "unskilled sedentary" work. (Record at 24.) When the claimant's ability to perform the full range of sedentary work is significantly impacted – as it was here by Plaintiff's nonexertional limitations– the ALJ must cite examples of jobs that the claimant can do. *Iannopollo v. Barnhart*, 280 F.Supp. 2d 41, 51 (W.D.N.Y. 2003). Whenever vocational resources are used and the decision is adverse to the claimant, the determination or decision will include: (1) citations of examples of occupations/jobs the person can do functionally and vocationally, and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country. SSR 85-15, 1985 WL 56857 *4.

The ALJ's use of a vocational expert resulted in a determination of "not disabled," however the ALJ failed to include such citations, examples, and descriptions required under the Social Security Regulations. It is clear from the record that the ALJ failed to satisfy the fifth step burden by identifying a specific job that Plaintiff could do.

*Vocational Expert's Testimony*

Plaintiff contends that the ALJ's questions to the vocational expert ("VE") did not accurately reflect Plaintiff's limitations. (Pl.'s Mem. 13.) Defendant counters that the residual functional capacity finding is supported by substantial evidence. (Def.'s Memo. 14.)

As stated before, the ALJ posed a series of hypotheticals to the VE during her testimony. (Record at 295-98.) She testified that an individual with Plaintiff's exertional limitations would be unable to perform his past relevant work and that there were no jobs in the national economy available for the "heavy" range of work that Plaintiff had previously

worked in. (Record at 295.) The ALJ then asked her if an individual with the same exertional limitations and "a moderate limitation in concentration, persistence and pace on complex and varied tasks but not on simple, repetitive and routine tasks." (Record at 297.) The VE responded that nothing in that hypothetical would preclude a full range of unskilled, sedentary-level work. (*Id.*) The ALJ then asked if a hypothetical individual who possessed the residual functional capacity found by Dr. Holder and the limitations from the first hypothetical would be precluded from finding a job that could accommodate him. In response, the VE indicated there were no such preclusions. (Record at 297-298.) Given an amended hypothetical in which the individual had "marked interference in concentration, persistence, and pace on even simple, repetitive and routine tasks," the VE found that those nonexertional limitations would preclude any work in the national economy at the unskilled, sedentary level. (Record at 298.)

Plaintiff argues that the VE's testimony did not support the ALJ's decision. (Pl.'s Memo. 13.) The VE's testimony supports the ALJ's decision in that it classifies the Plaintiff as "not disabled." The problem, though, is that the information given to the VE did not accurately reflect the entirety of Plaintiff's nonexertional impairments. During the ALJ hearing, Plaintiff's counsel argued that Plaintiff suffered from "difficulty with reading, writing and spelling, his IQ of 70-77, attention and concentration problems, processing of auditory information, problems in learning and work situations, problems with social and occupational functioning." (Record at 301.) Plaintiff correctly points out that the ALJ failed to include the limitations identified by Dr. Altmansberger and relied solely on the findings of Dr. Holder. Dr. Altmansberger's diagnosis was that Plaintiff suffers from a learning disorder, attention deficit disorder, and "borderline functioning." (Record at 201.) Dr.

Altmansberger concluded that Plaintiff does "have some difficulty with attention and concentration" however he "does not have marked functional limits." *Id.* Here, the ALJ did not give sufficient weight to the medical testimony of Dr. Altmansberger, in violation of 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2), which require "controlling weight" to be given to relevant testimony of a treating physician.

VE testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). Hypothetical questions constructed to assist a VE in determining whether there are any employment possibilities for a claimant are defective where they do not account for his actual limitations. *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir.1981); see also *Gilliam v. Califano*, 620 F.2d 691, 693-694 (8th Cir.1980). VE opinions elicited as a result of hypothetical questions that fail to relate with precision the physical and mental impairments of a claimant do not provide not substantial evidence on which an ALJ may base a decision. *Bradley v. Bowen*, 800 F.2d 760, 763 (8th Cir. 1986).

In this case, the hypotheticals posed to the VE did not accurately relate Plaintiff's mental impairments. Additionally, the ALJ failed to assign the appropriate weight to the medical testimony of Dr. Altmansberger, the omission of which led to the inaccurate hypotheticals presented to the VE. For these reasons, remand is granted on this issue.

***Plaintiff's Credibility at the Hearing***

Plaintiff argues that the ALJ failed to give good reasons for discounting Plaintiff's credibility. (Pl.'s Mem. 15.) The question here is whether the Commissioner's conclusions on the issue of Plaintiff's credibility were "supported by substantial evidence in the record as a whole." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). For the following reasons,

this Court finds the ALJ's determination as to credibility was based upon substantial evidence and it was reasonable for the ALJ to conclude that Plaintiff was "not entirely credible" in his decision. (Record at 23.) In that regard:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.... In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible.

SSR 96-7p, 1996 WL 374186, *4. In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Record at 23.)

In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements. SSR 96-7p, 1996 WL 374186, *5. During the hearing, the ALJ observed that "the claimant exhibited a considerable amount of pain behaviors, yet when the hearing was over he rose from the chair without any difficulty or pain behavior and easily left the hearing room." (Record at 22.) Also in his decision, the ALJ wrote that during the hearing, Plaintiff was not using a back brace or a cane—which Plaintiff said that he only used when he was in pain—but displayed a great deal of pain behavior. (Record at 23.) Plaintiff's memorandum of law cites *Soto v. Barnhart*, 242 F.Supp. 2d 251, 257 (W.D.N.Y. 2003), which states that the ALJ's in-court observations are entitled to very limited weight in

determining credibility where it is well documented that the plaintiff has endured pain for many years and has as a result learned to tolerate such pain. Here, while it is well documented that Plaintiff has endured pain for many years, part of Plaintiff's experience in tolerating such pain is using the pain relieving methods and tools available to him, and in this case these tools are Plaintiff's cane and back brace. If the plaintiff is not utilizing his methods of tolerating such pain, the ALJ is reasonable in questioning the credibility of the plaintiff's reported pain.

Further, the ALJ also noted: that Plaintiff was not currently taking medication for his pain or his claimed sleeping problems; that he had not used his TENS unit[5] for 6-7 months; and that he had not been in physical therapy since 2003. (Record at 23.) Plaintiff states that the ALJ did not ask for explanation as to why Plaintiff failed to obtain medical treatment, and argues that it is improper to draw inferences in such as case without an explanation. (Pl.'s Mem. 17.) SSR 96-7p explains:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their [sic] functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

SSR 96-7p, 1996 WL 374186, *7. At the hearing, the ALJ asked the Plaintiff why he hadn't used his TENS unit. (Record at 275.) Plaintiff replied, "I haven't needed to. I haven't—I

---

[5] "TENS" is the acronym for Transcutaneous Electrical Nerve Stimulation. A "TENS unit" is a pocket size, portable, battery-operated device that sends electrical impulses to certain parts of the body to block pain signals. The electrical currents produced are mild, but can prevent pain messages from being transmitted to the brain and may raise the level of endorphins (natural pain killers produced by the brain).

don't know. I just haven't. (*Id.*) Also on examination, Plaintiff explained to the ALJ that he does not take any medications for his pain because of a chemical imbalance. (Record at 273.) Plaintiff was also given a chance to explain why he did not bring his cane to the hearing. (Record at 275-276.) It is clear that the ALJ did ask for explanations as to why Plaintiff had not sought medical treatment. From the answers given, it is also reasonable that the ALJ would find those answers unsatisfactory and not entirely credible.

In addition, the ALJ wrote that "[t]he claimant's activities of daily living are certainly consistent with sedentary capability as he lives with and cares for his 8-year-old daughter." (Record at 23.) Plaintiff's activities of daily living included going grocery shopping, cooking, doing laundry, and cleaning the house. (*Id.*) It is true that the Second Circuit has consistently held that "a claimant need not be an invalid to be found disabled" under the Social Security Act. *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir.1988). That said, the daily activities of shopping, cooking, and cleaning have been found to be substantial evidence to support a finding of non-credibility. *Burgess v. Astrue*, 537 F.3d 117, 124 (2d Cir. 2008). In *Burgess*, the plaintiff was diagnosed with a discogenic disorder of the lumbosacral spine which is similar to the discogenic pain that Plaintiff was diagnosed with by Dr. Holder. (Record at 178.) The plaintiff in Burgess had only "mild impairment of her ability to sit, stand, walk, lift, carry, push, and pull," *Burgess*, at 124. Furthermore, the Second Circuit has questioned the credibility of claimants who are able to perform such daily activities as shopping and cleaning without pain medication. *Tappan v. Halter*, 10 Fed.Appx. 30, 2001 WL 604767, *2 (2d Cir. 2001) ("regardless of the reasons for not using them, it is undisputed that plaintiff engaged in the described activities without using prescription pain medication to treat her pain.").

Because Plaintiff has testified that he is able to perform significant activities of daily living without medication, the ALJ is justified in questioning the credibility of Plaintiff's subjective statements about his pain and the extent of his disability. For this reason, this Court finds that the Commissioner had substantial evidence to find Plaintiff "not entirely credible." Therefore, the Plaintiff's motion for judgment on the pleadings is denied on this issue.

**CONCLUSION**

For the reasons discussed above, Plaintiff's motion is granted in part and denied in part, and Defendant's motion is denied. This case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for a rehearing. The Clerk is directed to close the case.

IT IS SO ORDERED.

Dated: October 29, 2009
Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge